STATE ex rel FLANAGAN, Plaintiff, v. SOUTH DAKOTA RURAL CREDITS BOARD et al. Defendants.

(189 N. W. 704.)

(File No. 5133.   Opinion filed August 30, 1922.)

1. **Mandamus—Rural Credits Board, Compelling Filing of Reports —Relator, Right to Maintain Action, Question Not Determined.**

   The defendants, South Dakota Rural Credits Board, et al, not having raised issue as to relator's right to maintain this action, the question will not be considered.

2. **Public Moneys—Receipts, Expenditures, Publishing Reports Re— Statutory Provisions Re, Whether Mandatory or Self-executing —Itemized Statements, Publication Of, Constitution Requiring Legislative Action.**

   While, under Const., Art. 11, Sec. 12, an accurate statement of receipts and expenditures of public money is required to be published annually "in such form as the Legislature may provide," and under Art. 12, Sec. 4, publication of an itemized statement thereof is required to be made annually, "in such form as the Legislature shall provide," yet while said provisions are mandatory upon the Legislature they are not self-executing; the rule being that a constitutional provision is self-executing where no legislation is necessary to give it effect, and (following State ex rel v. Burkhart, 44 S. D. 285), where constitutional provisions omit detailed provisions needed to make them effective, they will not be considered as self-executing. Therefore held, that the constitutional command that itemized statements of receipts and disbursements of public money shall be published annually is directed to legislative branch of government, and cannot be exercised without legislative action.

3.  Same—Mandamus—State Officers, Boards, Duty of to Make,
    File, Financial Reports, Dependent Upon Legislation, No
    Mandamus Without—Statute.

    In absence of any constitutional mandate to any public
    officer or board directing making of reports or prescribing
    contents, time, place or manner of making or filing same, all
    matters preliminary to publication of "an itemized statement
    of all receipts and expenditures of the public moneys," (Const.,
    Art. 12, Sec. 4) are left to be prescribed by Legislature, and
    until it directs particular officers or boards to make same, and
    prescribes the particulars thereof, no official duty arises; in
    absence of which legislation court cannot by mandamus com-
    pel the performance of an act which the law specifically en-
    joins as a duty resulting from an office, etc., (Sec. 3006,
    Code 1919).

4.  Public Moneys—Making, Publishing Reports Re, Constitutional
    Provisions Mandatory on Legislature—Courts, Non-jurisdic-
    tion of to Compel Legislation.

    While the constitutional provisions (Art. 11, Sec. 12, Art.
    12, Sec. 4) requiring publication of statements of receipts and
    expenditures of public moneys in such form as the Legislature
    shall provide, are not mandatory upon the Legislature, yet
    the judicial department of the state government is without
    jurisdiction or authority to compel Legislature, a co-ordinate
    branch of government, to enact legislation required by consti-
    tutional provision, and valid legislative action cannot be con-
    trolled by judiciary by mandamus or otherwise, hence, no legal
    duty on part of state officers or boards receiving and disburs-
    ing public moneys and to make reports thereof, was created
    until Legislature acted and prescribed contents of and time,
    place and manner in which such reports should be made; and
    the duties of such officers and boards, enforceable by manda-
    mus, are none other than those specifically prescribed by Legis-
    lature.

5.  Mandamus—Office of to Require Performance Of, Not Create
    Duties, Failure of Legislature to Require "Itemized State-
    ments," Effect Re Official Duty to Make Reports—Required
    Official Duties Enforceable by Mandamus.

    The office of the writ of mandamus is not to create duties,
    but to require performance of duties already existing; yet no
    state officer or board is absolved from making or can justify
    a refusal to make reports required by statute on the ground
    that Legislature had failed to require itemized statements or
    reports pursuant to constitutional mandate; and, since statutes
    have been enacted, statements or reports substantially conform-
    ing thereto are required from every public officer, board or

person who by law is authorized to receive and expend public moneys, and such statutes may be enforced.

6.  **State Officers—Statutory Provisions Re Making Reports, Form Of—Bureau of Public Printing, Publication By, Not by Fiscal Officers—Complaint Alleging Negligence of Official Duty Re Printing and Publishing Reports, Irrelevancy, Immateriality Of in Mandamus to Require Publication.**

Sec. 7067, Code 1919, requires state officers, boards and institutions to make annual or biennial report to Governor, in the most condensed form, giving only "such information as is necessary to full disclose the transactions and conduct of such officer * * * during the period covered by such report," and Sec. 6923 requires all such reports to be made in duplicate form complete for publication, and to be supplied to printing commissioner by such officer or board, who is required forthwith to furnish copy to printer having the contract; and Sec. 7068 requires printing commissioner to refuse to accept any such report which does not comply with statutory provisions. **Held,** that while there are no constitutional provisions requiring any state board or fiscal officer to publish reports of its official transactions, Legislature enacted statutes (Secs. 6911-33, Code 1919) providing for making and filing of reports and placing duty of publishing same upon Bureau of Public Printing. Further provisions of Art. 2, Code 1919, specify the number of such statements or reports to be printed and manner of distribution, but boards and fiscal officers required to file statements or reports are not required to print, publish or distribute same, and no duty in that behalf is cast upon them either by Constitution or any legislative enactment. Therefore, all the numerous allegations of the complaint herein for writ of mandamus, charging defendants, South Dakota Rural Credits Board and its members, with neglect of official duty in failing to print and publish reports of transactions of said board and distribute same in public libraries and other places specified in the statute, are immaterial.

7.  **Mandamus—Rural Credits Bond, Mandamus Complaining of Misconduct in Stifling Competitive Bidding, Depositing Funds in Banks in Which Board Members Are Interested, etc., Irrelevancy of Under Mandamus—Statute.**

Allegations in a complaint in mandamus against the Rural Credits Board and members thereof, to compel filing of certain reports containing certain specified information—of official misconduct in attempting to stifle competitive bidding on Rural Credits bonds, depositing its funds in banks in which board members are stockholders, "granting loans to officials and politicians not entitled to be beneficiaries of said trust fund," and

that funds had been so handled as to render board's business insolvent, etc., are irrelevant, since (Sec. 3006, Code 1919) the writ of mandamus can be invoked only to compel perform- ance of an act "which the law specifically enjoins as a duty resulting from an office," etc.; and this Court is without jur- isdiction or authority to issue its mandate except to compel performance of some specific act or duty required by law; the remedy is not appropriate to compel a general course of offi- cial conduct, or a long course of continuous acts, it being im- possible for Court to oversee performance thereof.

**8. Mandamus—Demanded Relief Limited to Preparation and Filing of Reports for Fiscal Years—Allegation of Misconduct, Irrele- vancy Of.**

The prayer in a complaint in mandamus, being confined to preparation and filing of full reports of Rural Credits Board's transactions and conduct of its affairs for each of four years, therefore held, that the purpose of ascertaining charges of official misconduct, etc., on part of the board requires no con- sideration, such irrelevant matters in no way affecting extend- ing or limiting board's duty to make the statements or re- ports required by law.

**9. Rural Credits—Reports Of, System of Books Of, "Full" but Not Itemized Report Required—Statutes—Reports, Presumption Re.**

Sec. 10,153, Code 1919, as amended by Ch. 304, Laws 1919, provides in substance that the State Rural Credits Board be- fore issuing warrants or bonds, shall furnish to and file with the Governor a financial statement showing condition of its business and such other and further information as may be required by him, a copy thereof to be transmitted to Secretary of State, and to make to Governor, annually, as provided by Secs. 6922 and 7067, "a full report of its business for the preceding fiscal year, with such general information and recom- mendations as the board deems proper, and to make a monthly statement of its business upon a form required by executive accountant, who shall audit and report upon same; and Sec. 10,166 makes it duty of the board, assisted by executive ac- countant and superintendent of banks, to procure and maintain in the board's offices such system of books, records, etc., vouch- ers, etc., required to separate and verify each transaction, and forms for reports and statements required for administrative use under said provisions and those of Sec. 7067, which pro- vides for the form of state official reports. The Legislature has not and did not intend to provide that the annual report to be filed with Governor and published by printing commis- sioner should be an itemized report of "receipts and disburse-

ments of all public moneys," but did intend to require "a full report of its business for the preceding fiscal year," which shall be "in the most condensed form, giving only such information as is necessary to fully disclose the transactions and conduct of the board"; and it is presumed that the reports in question which have been made by the Rural Credits Board were in form prescribed by it with assistance of executive accountant and superintendent of banks.

10.  **Same—Board's Duties ·Enforceable by Mandamus—Defense to Writ Showing Statement of Board's Conditions in Detail, Sufficiency of—One Additional Annual Report Required.**

An answer to which complaint for a writ of mandamus against the State Rural Credits Board, which shows applications and number of loans, etc., bonds issued, board's resources in detail, state appropriation, bonds sold, accrued interest, interest on daily balances of deposits and on mortgages, premiums on bonds, and interest on state warrants, shows compliance with statutes (Sec. 10,153, Code 1919, as amended by Ch. 304, Laws 1919, Secs. 10,166 and 7067, Code 1919) requiring a condensed report and statement of business and transactions of the board; except that such reports for the years 1917 to 1920 were not filed annually as required by statute, and with further exception that the report covering period from June 30, 1920, to December 31, 1920, does not purport to be the annual report required; and, since board failed to file an annual report for the period from June 30, 1920, to June 30, 1921, writ of mandamus will issue requiring such filing.

Original proceeding by the State of South Dakota on the relation of Walter J. Flannigan, against the South Dakota Rural Credits Board and the individual members thereof. and Byron S. Payne, as Attorney General, seeking a writ of mandamus compelling said officers to prepare and file full reports of its transactions and the condition of its affairs for the fiscal years ending June 30, 1918, 1919, 1920, and 1921, and requiring that said reports contain certain specified information; the proceedings having been dismissed as to the Attorney General.  Writ issued requiring filing of an annual report for the period from June 30, 1920, to June 30, 1921.

*Walter J. Flanagan,* Plaintiff, pro se.

*Byron S. Payne,* Attorney General, and *Vernon R. Sickel,* Assistant Attorney General, for Defendants.

SMITH, J.  This is a proceeding in the name of the State of South Dakota, upon the relation of one Walter J. Flanagan,

against the South Dakota Rural Credits Board and the individual members thereof, and against Byron S. Payne, as Attorney General, seeking a writ of mandamus compelling the said officers "to forthwith prepare and file, in duplicate, full reports of its transactions and conduct of its affairs for each of the fiscal years ending on June 30, 1918, 1919, 1920, and 1921," and requiring "that said reports contain the following necessary information;" to-wit:  (1) Bond issues, specifying 16 particulars; (2) bond interest, specifying 10 particulars; (3) special warrants, specifying 19 particulars; (4) mortgage loans made, specifying 16 particulars; (5) depositaries of funds, specifying 10 particulars, subdivided into active and inactive deposits, specifying some 23 particulars; (6) a detailed summary statement of assets and liabilities as of June 30, 1921.

[1] By consent in open court, the proceedings were dismissed as to the Attorney General. In view of the fact that defendants have raised no issue as to the right of relator, Flanagan, to maintain this action, we are not called upon to consider, and do not pass upon, that question at this time.

After admitting the merely formal allegations of the complaint, defendants' answer alleges that during every fiscal year since the organization of the board it has issued bonds authorized by the law under which the board operates, and before each issue has furnished the Governor a financial statement showing the conditions of the business of the board, which statement, in each instance, showed the total applications for loans, the amount thereof, the number of loans and the amount, the number of applications approved, the number under investigation, the number of applications canceled, and bonds issued, showing date, series, and amount; also a statement of the resources of the board, including the following items: Farm loans, interest paid on bonds, officers' and employees' salaries, legal expenditures, postage and office expenses, expenses on examination of land, furniture and fixtures, miscellaneous expenses, cash in hands of treasurer, state treasurer's balance of appropriation, and discount on bonds, which statement also contains a statement of the liabilities of the board, including the items: State appropriation, rural credits bonds sold, accrued interest on bonds, interest on average daily balances, interest received on mortgages, interest received on delinquent

installments, premium received on bonds, and interest received on state warrants.

Defendants further allege that in every instance where bonds have been issued, the board has, immediately after such issue, submitted to the Governor of the state, a full statement of such issue; that each such statement shows a copy of the resolutions of the board authorizing and directing the issuance of such bonds, and shows the amount of bonds, the rate of interest, date of issue, when due, a form of the bonds, and a copy of the resolution of sale of the bonds and the contract entered into with the purchaser; that the said statements and reports were filed in the office of the Governor, and a copy thereof transmitted to the secretary of state and filed in his office as a permanent record, subject to examination by the public at any time. The defendants tender to the court, as a part of the return, copies of all financial statements and reports made at the time of the respective bond issues. Defendants further allege that no warrants have ever been issued by the board for the purpose of borrowing money at any time since its organization.

Defendants further allege that, in addition to the statements above referred to, the board did on June 30, 1920, file in the office of the Governor a full report of its business for the preceding fiscal years from the date of its organization, which report was made in accordance with the provisions of section 10153, R. C. 1919, as amended by chapter 304, § 2, Session Laws 1919, and in accordance with the requirements of section 7067, R. C. 1919, which annual reports were in accordance with the provisions of law referred to, requiring that they be made "in the most condensed form"; that said annual statements showed the total receipts and disbursements of the board for the fiscal years ending June 30, 1918, June 30, 1919, and June 30, 1920, and the total cash on hand, the amount received from sale of bonds and accrued interest, the amount of interest received on average daily balances, the vouchers returned and canceled, and the amount drawn from legislative appropriations; that the disbursements shown in such reports include the amount of farm loans, less payments, interest paid on bonds, salaries, legal expenses, postage, and supplies, expenses of examination of land, furniture and fixtures, miscellaneous expenses, and discount on bonds; that each

40—Vol. 45, S. D.

of said statements included a statement of resources and liabilities of the board for each of said fiscal years; the items of resources shown were farm loans, interest paid on bonds, officers' and employees' salaries, legal expenses and office expenses, expense of examination of land, furniture and fixtures, miscellaneous expenses, cash on hand, balance of appropriation in hands of state treasurer, and discount on bonds; that the liabilities, in each instance, embrace the total appropriations, bonds, accrued interest on bonds, interest on average daily balances, and return vouchers canceled; that the statement filed in the office of the Governor on June 30, 1920, contains an itemized statement showing the loans made from July 1, 1917, the date of the organization of the board, to June 30, 1920, the counties in which such loans were made, the number of loans in each county, the amount of money loaned in each county, the number of acres in every county held as security for loans, and the average amount loaned per acre in each county; that on January 1, 1921, there was filed in the office of the Governor a supplemental statement and report showing the same things above referred to from June 30, 1920, to December 31, 1920, and all of said reports are in the office of the Governor, are public records, and may be examined by the public, and the defendants tender copies of said reports so on file; that all of said reports were made in condensed form because of the provisions of section 7067, Rev. Code 1919, which, according to the understanding of the board, prohibited any itemized or detailed report, and for the further reason that section 7068, Rev. Code 1919, prohibits the commissioner of public printing from accepting a report of any state official or board which is not made in the condensed form required by section 7067, and for no other reason; that the names of borrowers and the amount loaned to each were omitted from said reports, because such information is a matter of public record in each county in the state where mortgages are filed and recorded, and are subject to examination by any person interested; that an itemized statement of each receipt and expenditure in detail, showing the date of receipt of payment, the person to whom paid, the purpose for which paid, and the amount thereof, were omitted from the annual statements filed with the Governor because of the provisions of sections 7067 and 7068, Rev. Code 1919, which prohibit

the use of public funds for the printing of such items; that section 5347, Rev. Code 1919, requiring publication of itemized statements of receipts and expenditures through the office of the state auditor, do not apply to the rural credits board, for the reason that the state auditor is not required to keep accounts of the rural credits board, and no itemized vouchers are required to be filed in his office; that the executive accountant is made by law the auditing officer of the rural credits board and the law does not require the filing or publication of itemized statements of the receipts and expenditures of the rural credits board, and does not authorize the use of public funds for that purpose.

Defendants further allege that they have made monthly statements to the executive accountant on forms provided by him, which have been audited by said accountant, who has also made an examination of the affairs of the board, including all its receipts and expenditures, regularly, at the time and in the manner provided by law, and that copies of the reports of such accountant have been filed with the Governor and the rural credits board as required by law, which reports are public records.

[2]  Section 12, art. 11, of the Constitution, provides:

"An accurate statement of the receipts and expenditures of the public moneys shall be published annually, in such manner as the Legislature may provide."

Section 4, art. 12, of the Constitution, further provides:

"An itemized statement of all receipts and expenditures of the public moneys shall be *published annually in such manner as the Legislature shall provide,* and such statement shall be submitted to the Legislature at the beginning of each regular session by the Governor with his message."

While these provisions of the Constitution are mandatory upon the Legislature, they are not self-executing.  The rule is clearly and concisely stated in 6 R. C. L. 67 (52):

"A clear distinction exists between the question as to whether a constitutional provision is mandatory or directory, and whether it is self-executing or requires legislation in order to give it effect. A provision may be mandatory without being self-executing. * * * A constitutional provision is self-executing where no legislation is necessary to give it effect."

Id., p. 61, § 57:

"In adopting Constitutions, the people frequently leave to the Legislature the enactment of statutes as to detailed matters, in order to make the provisions fully operative. * * * Where the constitutional provisions wholly omit the detailed provisions needed to make them effective, the rule is established that they will not be considered as self-executing." State ex rel v. Burkhart, 44 S. D. 285, 183 N. W. 870.

[3] The constitutional command that itemized statements of receipts and disbursements of public moneys shall be published annually is directed to the legislative branch of the government, and connot be executed without legislative action. The Constitution contains no mandate to any public officer or board, directing such officer or board to make reports, or prescribing the contents, or the time, place, or manner of making and filing reports. All matters preliminary to the publication of "an itemized statement of all receipts and expenditures of the public moneys," required by the Constitution, are left to be prescribed by the Legislature, and until the Legislature directs the particular officers or boards to make such reports, and prescribes the contents, and the time, place, and manner of making them, no official duty in that behalf arises, and in the absence of such legislation the court could not by mandamus, "compel the performance of an act which the law specifically enjoins as a duty resulting from an office," etc.

[4] We are of the view that the sections of the Constitution above referred to are mandatory upon the Legislature to enact provisions for the making and filing of such reports or statements as the Constitution requires, and for publishing them annually. But no rule of constitutional law is more firmly established than that which declares that the judicial department of the state government is without jurisdiction or authority to compel the Legislature, a co-ordinate branch of the government, to enact legislation required by constitutional provisions. State v. Bolte, 151 Mo. 362, 52 S. W. 262, 74 Am. St. Rep. 537. In that case the court said:

"Where the action of the Legislature is within its legislative power, it cannot be controlled by the judiciary by mandamus, or in any other way, for to do so would be the usurpation of a power which does not belong to the latter."

It necessarily follows that no legal duty was created on the part of officers or boards receiving and dispursing public moneys to make reports or statements thereof, until the Legislature acted and prescribed the contents of and the time, place, and manner in which such reports should be made, and, finally, when the Legislature acted, the duties of such officers and boards which could be enforced by mandamus could be none other than those specifically prescribed by the Legislature.

[5] The office of the writ is not to create duties, but to require the performance of duties already existing. State v. Wilson, 123 Ala. 259, 26 South. 482, 45 L. R. A. 772. And it is equally clear that no officer or board could be absolved from the duty of making, or could justify a refusal to make, such reports as the statute requires, on the ground that the Legislature had failed to require itemized statements or reports in conformity with the mandate of the Constitution. But it is also clear that, since statutes have been enacted, statements or reports substantially conforming therewith are required from every public officer, board, or person who, by law, is authorized to receive and expend public moneys for any purpose, and that such statutes create official duties which may be enforced by mandamus.

[6]. Section 7067, Rev. Code 1919, provides:

"Every state officer, board and institution required to make an annual or biennial report to the Governor, *shall make the same in the most condensed form, giving only such information as is necessary to fully disclose the transactions and conduct of such officer, board or institution during the period covered by such report,* which period shall end on the 30th of June preceding the filing of such report."

And section 6923, Rev. Code 1919, requires that all reports made by state officers or boards to the Governor shall be made in duplicate form *complete for publication,* etc., and shall be supplied to the printing commissioner by such officer or board, who is required, forthwith, to furnish copy to the printer having the contract, and section 7068, Rev. Code 1919, provides that the printing commissioner shall refuse to accept the reports of any state officer, board, or institution which do not comply with the provisions of this Code, and requires him to return such report to the officer, board, or commissioner making the same, to be completely revised in accordance with section 7067.

There are no provisions in the Constitution requiring or commanding any board or fiscal officer of the state to *publish* reports of its official transactions. But the Legislature has enacted statutes providing for the making and filing of reports and has placed the duty of publishing such reports upon the bureau of public printing. See Code 1919,tit. 6, pt. 10, c. 2, art. 2, §§ 6911-6933. Section 6923, Rev. Code 1919, provides that:

"All reports made by state officers or boards to the Governor shall be made in duplicate form, *complete for publication,* exclusive of index, which shall be supplied to the commissioner by such officer or board within two weeks after receipt of printed dummy."

The commissioner is required, forthwith, to furnish copy to the printer having the contract, etc. Other provisions of title 6, pt. 10, c. 2, art. 2, Rev. Code 1919, supra, specify the number of such statements or reports to be printed, and the manner of distribution thereof. The boards and fiscal officers who are required to file statements or reports are not required to print, publish, or distribute the same, and no duty in that behalf is cast upon them, either by the Constitution or by any legislative enactment.

It follows that all the numerous allegations of the complaint charging defendants with neglect of official duty in failing to print and publish reports of the transactions of the board and distribute the same in public libraries and other places specified in the statute are wholly immaterial to any issue before us and require no further consideration.

[7] The complaint also contains numerous charges of official misconduct, such as attempts to stifle competitive bidding on rural credit bonds, depositing rural credit funds in banks in which members of the board are stockholders, and granting loans to officials and politicians "not entitled to be beneficiaries of said trust funds"; that the funds have been so handled as to render the business of the board insolvent, with appended tables of calculations and computations claimed to show such conditions. We are unable to comprehend the purpose for which these charges and allegations were made a part of the complaint. Every lawyer understands that the writ of mandamus can be invoked only "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station," etc. (section

3006, R. C. 1919), and that this court is without jurisdiction or authority to issue its mandate, except to compel performance of some specific act or duty required by law.

"Mandamus is not an appropriate remedy to compel a general course of official conduct or a long series of continuous acts, as it is impossible for the court to oversee the performance of such duties. The proper function of a mandamus is to compel the doing of a specific thing; something which can be neither diminished or subdivided." Coal Co. v. State of Oklahoma ex rel Marshall, 31 Okl. 629, 122 Pac. 194, 39 L. R. A. (N. S.) 810, and note.

[8] In view of the fact that plaintiff in the prayer of the complaint demands no other relief. than that defendants be required to "forthwith prepare and file in duplicate full reports of its transactions and the conduct of its affairs for each of the fiscal years ending on June 30th in 1918, 1919, 1920, and 1921," specifying particulars which he claims should be disclosed by such statements or reports, it seems clear that he fully understands the character and limitations of the writ demanded. For this reason, the purpose of the extended charges of official misconduct, malfeasance, and business incompetency on the part of the rural credits board, embodied in the complaint, is not apparent to us, and the same require no discussion or consideration. Such irrelevant matters in no way affect, extend, or limit the duty to make the statements or reports required by law.

Section 10153, Rev. Code 1919, as amended by chapter 304, § 2, Laws of 1919, provides:

"Before issuing any such warrants or bonds it shall be the duty of the board to furnish the Governor a financial statement, showing the condition of the business of the board, and such other and further information as may be required by him, which statement shall be filed in the office of the Governor and a copy thereof shall then be transmitted to the secretary of state, to be filed and kept by him as a permanent record of his office, * * * and to make to the Governor, annually, at the time and in the manner provided by sections 6922 and 7067, a full report of its business for the preceding fiscal year, with such general information and recommendations as may to the board seem proper. It shall be the duty of such board to make a monthly statement of

its business upon such form as may be required by the executive accountant, and it shall be the duty of such accountant to audit such statements and make a written report thereon, which shall be filed in his office as a permanent record, a copy of which shall be forthwith transmitted to the Governor and to the secretary of such board."

[9] Section 10166, Rev. Code 1919, provides:

"It shall be the duty of the board, assisted by the executive accountant and superintendent of banks, to prescribe and maintain in the office of such board such system of books, records, accounts, receipts, vouchers and documents required to separate and verify each transaction and forms for reports and statements required for the administration of the officers of the board or for the information of the public, as such board and assistants shall deem proper and necessary for the same and convenient conduct of the business of the board."

In the light of the various provisions of the Code above referred to, it is entirely clear that the Legislature has not provided and did not intend to provide that the annual report to be filed with the Governor and published by the printing commission should be an itemized report of "the receipts and disbursements of all public moneys," but did intend to require "a full report of its business for the preceding fiscal year," a report "in the most condensed form, giving only such information as is necessary to fully disclose the transactions and conduct of such * * *. board * * * during the [annual] period covered by such report." Rev. Code 1919, § 7067.

And furthermore, by section 10166, Rev. Code 1919, it is made the duty of the board, assisted by the executive accountant and superintendent of banks, to prescribe a system of bookkeeping and accounting, and to prescribe "forms for reports and statements required for the administration of the officers of the board or for the information of the public, as such board and assistants shall deem proper and necessary for the safe and convenient conduct of the business of the board." In the light of this section, we must presume that the reports that have been made have been in the form prescribed by the board, with the assistance of the executive accountant and the superintendent of banks.

[10] It was and is the legal duty of the board to comply

with these provisions of the statute—a duty which may be enforced by mandamus. The reports referred to in the answer and offered in evidence are so numerous that we cannot attempt to discuss them in detail, but after a careful examination thereof we must be content to say that, in substance, they constitute compli-ance with the statutes requiring a condensed report and statement of the business and transactions of the board, except that such reports for the years 1917 to 1920 were not filed annually as required by the statute, and with the further exception that the report covering the period from June 30, 1920, to December 31, 1920, does not purport to be the annual report required. Of course, this court, at this time, is without power to rectify the failure of the board to file annual reports at the time required by statute; but, as the board has failed to file an annual report for the period from June 30, 1920, to June 30, 1921, it becomes the duty of the court to issue its mandate requiring the filing of such report.

Such mandate will issue.

ANDERSON, J., taking no part in this decision.