WORZELLA, Appellant v. BOARD OF REGENTS et al., Respondents

(93 N.W.2d 411)

(File No. 9722. Opinion filed December 10, 1958)

**M. T. Woods,** Sioux Falls, for Plaintiff and Appellant.

. **Phil Saunders,** Atty. Gen., **George Wuest, Val Higgins,** Asst. Attys. Gen., for Defendants and Respondents.

HANSON, J. The petitioner, Dr. W. W. Worzella, seeks a writ of mandamus compelling the State Board of Regents to reinstate him as professor of agronomy or as head of the agronomy department at South Dakota State College. The circuit court refused relief and he appeals.

Dr. Worzella was first employed as a professor of agronomy at State College on October 1, 1943. Therafter he served continuously on that faculty until discharged by the Board of Regents on January 11, 1958. He was dismissed after an extensive investigation into the personnel and administrative affairs of State College by the Board. After the investigation the Board prepared a written report. With reference to Dr. Worzella the Board found he "* * * wittingly or unwittingly, permitted himself and his name to become involved in serious personal disputes and activities in the many years above referred to, and has * * * been guilty of insubordination; that by virtue of the controversial character he has become, it would not be to the best interests of South Dakota State College for him to be retained." The Board concluded "the retention of Dr. W. W. Worzella as head of the Department of Agronomy is incompatible to the best interest and welfare of State College, its students, and the State of South Dakota as a whole, and that he should be summarily dismissed and relieved from all further duties under his current contract; his compensation, however, to continue as therein provided during the remainder of this fiscal year." His summary dismissal followed.

Dr. Worzella contends he has permanent tenure under a tenure policy approved by the Board of Regents and could be dismissed only in compliance with its substantive and procedural provisions. It is conceded that no complaint was filed, notice given, or hearing held pursuant thereto. However, the Board maintains the tenure policy did not, and could not, abrogate its constitutional and statutory power to dismiss all officers, instructors, and employees under its control.

The advisability of establishing and the merits of academic tenure are not involved. We are concerned only with the validity and enforceability of the tenure policy approved for State College by the Board of Regents.

The exact meaning and intent of this so-called tenure policy eludes us. Its vaporous objectives, purposes, and procedures are lost in a fog of nebulous verbiage. We gather from it, in general, that a faculty member who is retained on the staff at State College for over three years gains permanent tenure. He cannot thereafter be divested of tenure unless a complaint against him is filed by the president of the college. He is then entitled to have notice of hearing, and a hearing before a Tenure Committee consisting of seven faculty members. It further provides that "since the final decision must be made by the President" it is desirable that he sit with the Tenure Committee during the formal hearing as an auditor. At the conclusion of the hearing the committee makes its recommendations to the president. The president must then decide whether to recommend the dismissal of the accused faculty member to the Board of Regents. The faculty member whose dismissal is recommended may appeal for a hearing before the Board. The concluding paragraph states that the tenure policy is based "upon good faith between the college administration and the individual faculty member".

The policy statement is silent as to the Board of Regents' authority. By inference we may assume the Board would have power to discharge a faculty member having tenure when recommended by the Tenure Committee and President. Otherwise the Board would have no authority

to act. Apparently the Board could not discharge or remove a faculty member with tenure for any reason if the President failed or refused to file a complaint, or if the Tenure Committee and President failed or refused to recommend dismissal. We believe this to be an unlawful abdication of the Board's exclusive prerogative and power.

The Board of Regents is a constitutionally created administrative body charged with the control of all institutions of higher learning "under such rules and restrictions as the legislature shall provide". § 3, art. XIV. With reference to the issue involved the legislature has provided:

"The Board of Regents is authorized to employ and dismiss all officers, instructors, and employees of such institutions, necessary to the proper management thereof, to determine their number, qualifications, and duties, fix the term of their employment, and rate and manner of their compensation, and provide for sabbatical leave on part pay; provided, that no person shall be employed or dismissed by reason of any sectarian or political opinions held." SDC 15.0709.

"The Board of Regents shall have power to enact and enforce all rules and regulations, not in conflict with any law, and deemed necessary by it for the wise and successful management of the institutions under its control and for the government of students and employees therein.

"The Board may delegate provisionally to the president, dean, principal, or faculty of any school under its control, so much of the authority conferred by this section as in its judgment seems proper and in accordance with the usual custom in such cases." SDC 15.0714.

The above statutory provisions merely confirm and clarify the Board of Regents' constitutional power to employ and dismiss all officers, instructors, and employees at all institutions under its control. These provisions become a part of every contract of employment entered into by the Board. Gillan v. Board of Regents of Normal Schools, 88 Wis. 7, 58 N.W. 1042, 24 L.R.A. 336. It cannot be restricted, surrendered, or delegated away. Our constitution prescribes that our state university and colleges "shall be

under the control" of the Board of Regents. Without the right to employ, and the power to discharge, its employees the Board loses its constitutional right of control. The same result was reached in a recent comparable case in North Dakota involving similar constitutional and statutory provisions. See Posin v. State Board of Higher Education, N.D., 86 N.W.2d 31.

■ Under SDC 15.0714 the Board of Regents "may delegate provisionally to the president, dean, principal, or faculty of any school under its control, so much of the authority conferred by this section as in its judgment seems proper * * *." This is a limited power. It does not empower the Board to delegate away all of its powers· or its constitutional duty of control. Under its provisions the Board may only delegate the limited authority conferred on it by the same section.

In support of his contentions petitioner cites, and largely relies on, the cases of State ex rel. Keeney v. Ayers, 108 Mont. 547, 92 P.2d 306, and State ex rel. Richardson v. Board of Regents of University of Nevada, 70 Nev. 144, 261 P.2d 515. Neither case involves comparable facts. Both are readily distinguishable. In Montana the state university and colleges are under the control of the State Board of Education. In Nevada they are under the control of the State Board of Regents. The tenure regulations in both states provide for the removal of a faculty member after a hearing before the governing board itself. In Nevada apparently no provision whatsoever is made for a preliminary hearing before a faculty committee. In Montana the recommendation of the faculty service committee is advisory only. Its recommendation is not binding on the Board. Neither case involves the question of delegated, surrendered, or diminished authority to dismiss or discharge faculty members. In both Montana and Nevada the governing boards reserve the ultimate power to remove any faculty member on tenure. Their power of dismissal is not dependent upon the prior action or recommendation of any subordinate body, committee, or person. The distinction is of vital importance.

In South Dakota, under the present tenure policy at State College, the Board of Regents cannot remove a faculty member for any reason or cause on its own volition. Without the prior action and approval of the President and Tenure Committee the Board is powerless to act. The President and Tenure Committee do not serve in an advisory capacity only. Their action and approval are conditions precedent to any dismissal of college personnel by the Board. Such delegation of authority to subordinates is an unlawful encroachment upon the Board of Regents' constitutional and statutory power of control over such college. A writ of mandamus was, therefore, properly denied by the trial court.

Affirmed.

All the Judges concur.