David CARLSON, Plaintiff
and Appellant,

v.

John W. HUDSON, as Superintendent of
the South Dakota School for the Deaf,
and John W. Larson, John E. Sutton,
Patricia Mendel, Leslie W. Jensen, H.
Lauren Lewis, Celia Miner and Russell
O. Peterson, as South Dakota Regents
of Education, Defendants and Respon-
dents.

No. 12406.

Supreme Court of South Dakota.

Argued Jan. 24, 1979.

Decided April 12, 1979.

Dennis L. Duncan of Zimmer, Richter & Duncan Parker, for plaintiff and appellant.

David J. Figuli, Asst. Atty. Gen., Pierre, for defendants and respondents; William J. Janklow, Atty. Gen., Pierre, on brief.

MORGAN, Justice.

This is an appeal from a judgment of the Circuit Court for the Second Judicial Circuit affirming the Board of Regents' termination of appellant's employment as an instructor at the State School for the Deaf. Appellant contends that his statutory and due process rights were violated. We affirm the circuit court's action.

David Carlson, appellant, had been employed as a teacher at the School for the Deaf in Sioux Falls, South Dakota, since 1957. In 1969, an incident involving some girls in one of his classes resulted in his being reprimanded and the exclusion of girls from his classes for a time. In 1973, a similar incident was reported and, in August of 1973, appellant was informed by the school superintendent, Mr. Hudson, that he would not be recommending that appellant be rehired for the academic year 1974–75. The matter had been brought to the attention of the Board of Regents (Regents) in an executive session in July of 1973, with no immediate action or discussion made public.

At the Regents' April 1974 meeting, Mr. Hudson presented, and the Regents approved, the salary list for the School for the Deaf for the academic year 1974–75. The salary list did not contain appellant's name but did contain an allocation for his position which was listed as vacant, thus effectively terminating his employment.

On April 27, 1974, a hearing was requested by appellant concerning his termination. The hearing, which was held on May 20, 1974, with Superintendent Hudson presiding, resulted in affirmance of appellant's termination. Finally, on July 29, 1974, the Regents specifically acknowledged appellant's termination.

Appellant then appealed Superintendent Hudson's decision to circuit court, which resulted in dismissal of the petition for review. Appellant now appeals the decision of the circuit court.

We deal first with appellant's substantive question raised by his contention that his employment by the Regents fell within the provisions of SDCL 13–43–9 through SDCL 13–43–10.1 inclusive. Under those provisions, which are commonly referred to as the "continuing contract" law, a teacher who is in or beyond his/her third full term of employment is entitled to certain procedural steps including proper notice, hearing and stated reasons for dismissal. Appellant argues that these procedures were not followed and that his dismissal was improper. The circuit court ruled, however, that the provisions of SDCL Chapter 13–43 are not applicable to teachers at the South Dakota School for the Deaf and appellant is therefore not entitled to their protection and he cannot rely upon SDCL Chapter 13–40 as a basis for appeal. We agree.

South Dakota statutory law in the area of education is contained in SDCL Title 13, which consists of sixty-two separate chapters. SDCL Chapters 13–1 through 13–46 essentially deal with elementary and secondary education including schools, students and teachers. SDCL Chapters 13–49 through 13–62 essentially deal with the Regents and the institutions, students and teachers under its control. The establishment and maintenance of a system of elementary and secondary schools by the legislature has its foundation in Article VIII, § 1

of the South Dakota Constitution.[1] The responsibility to create, maintain and provide for the governing of such a system was left in the hands of the legislature. The establishment and maintenance of South Dakota's institutions of higher education, as well as the schools for the visually handicapped and for the deaf, however, were not left to the legislature. They were provided for under a separate section of the constitution, and in that same section, the constitution places "control" of those institutions in the hands of the Regents.[2] This Court has previously stated that the "control" vested in the Regents by the constitution unequivocally includes the unfettered right to employ and discharge its employees. *Worzella v. Board of Regents of Education*, 77 S.D. 447, 93 N.W.2d 411 (1958). Further, the legislature has provided that,

> The board of regents is authorized to employ and dismiss all officers, instructors, and employees of such institutions, necessary to the proper management thereof, to determine their number, qualifications, and duties, fix the term of their employment, and rate and manner of their compensation, . . . . SDCL 13–49–14.

1. Article VIII, § 1 of the South Dakota Constitution reads as follows:

   > The stability of a republican form of government depending on the morality and intelligence of the people, it shall be the duty of the Legislature to establish and maintain a general and uniform system of public schools wherein tuition shall be without charge, and equally open to all; and to adopt all suitable means to secure to the people the advantages and opportunities of education.

2. Article XIV, § 3 of the South Dakota Constitution reads as follows:

   > The state university, the agriculture college, the school of mines and technology, the normal schools, a school for the deaf, a school for the blind, and all other educational institutions that may be sustained either wholly or in part by the state shall be under the control of a board of five members appointed by the Governor and confirmed by the senate under such rules and restrictions as the Legislature shall provide. The Legislature may increase the number of members to nine.

3. *Worzella v. Board of Regents of Education*, 77 S.D. 447, 93 N.W.2d 411, 413 (1958).

This provision, although "merely confirm[ing] and clarify[ing] the Board of Regents' constitutional power to employ and dismiss all officers, instructors, and employees at all institutions under its control,"[3] signifies the legislature's recognition of the Regents' independent power to control and determine its employee relationships, rules and regulations. The legislature is without power to statutorily establish a tenure system for the employees of the Regents and, therefore SDCL Chapter 13–43 does not apply to those employees and they do not receive any protections it would afford.[4]

We next look to appellant's procedural questions raised by his contention that the trial court erred when it concluded: (1) that his discharge did not give rise to a contested case as defined by SDCL 1–26–1(2) thereby affording him the procedural protection and the safeguards of SDCL Chapter 1–26; and (2) that he was not denied due process in the hearing before Superintendent Hudson.

In order for the provisions of SDCL Chapter 1–26 to apply, the matter at hand must be a "contested case" as defined in SDCL 1–26–1(2).[5] In considering whether this matter is a contested case, the key

4. It should be noted that SDCL Chapter 13–43 is located in the group of chapters dealing with elementary and secondary education and not in the chapters dealing with the Regents. This is certainly not conclusive, but is one more indicia of the intent of the legislature. Further, SDCL Chapter 13–43 continually refers to "school boards" and "school districts," which are creations of the legislature through statute. (See definition of "school district" at SDCL 13–5–1 and "school board" at SDCL 13–8–1.) The Regents is not a creation of the legislature but rather a constitutional body. Therefore, appellant's contention that the Regents is a "school board" has no basis.

5. SDCL 1–26–1(2) reads as follows:

   (2) 'Contested case' means a proceeding, including but not restricted to rate-making and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing but the term shall not include the proceedings relating to rule-making other than rate-making;

phrase in the definition is *"required by law to be determined by an agency after an opportunity for hearing . . . ."* (Emphasis added.) In *Valley State Bank of Canton v. Farmers State Bank*, 87 S.D. 614, 213 N.W.2d 459, 463 (1973), this Court stated that there are three ways that a hearing can be "required by law": (1) a statutory requirement, (2) an agency rule requirement, or (3) a due process constitutional requirement. Appellant does not contest the absence of a statutory requirement. There is, however, some indication that the Regents may have set up an agency rule requirement by adoption of Policy Resolution No. 75–1969, which provides:

> BE IT RESOLVED, that the Board of Regents will hear any party or parties desiring an audience with the Board. However, if an individual institution [sic] is involved in the subject of the hearing, then the person or persons will first fully discuss the problem with the president or superintendent of the institution involved. If a further hearing is necessary, the interested party will next discuss his problem with the Commissioner of Higher Education. If the problem is still not resolved, the Commissioner will schedule a hearing before the Board of Regents at one of its regularly scheduled meetings. It is anticipated that most problems will be resolved at the institutional level. Problems and/or inquiries not involving an institution but pertaining to Board of Regents policies will be first presented to the Commissioner of Higher Education, and a hearing with the Board will be arranged if necessary.

**6.** The superintendent testified that the Board of Regents had adopted no rules and regulations for the nonrenewals and dismissals of faculty members at the School for the Deaf.

**7.** It is apparent from the evidence, and uncontested by appellant, that, at the time of the dismissal, the Regents had no written policies for the employment or discharge of employees at the School for the Deaf nor was there any written formal tenure policy. The fact that there was no formal tenure policy does not, however, preclude a party from proving that a de facto tenure policy existed, (see *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and we do not by this opinion state or imply that a de facto tenure policy

If such a pronouncement could be deemed a rule, then we are immediately faced with the proposition that appellant failed to exhaust his administrative remedies, for he never sought a hearing or "audience" before the Regents. However, because the record casts considerable doubt upon whether appellant was ever properly advised of the provisions of the policy resolution and because there is no evidence that the policy resolution was ever promulgated and adopted as a rule per se,[6] we choose to deem it not to be an agency rule requirement within the contemplation of our decision in the *Valley State* case, supra.

■ We must then consider whether appellant had a due process right to a hearing.[7] He asserts that he has a property right in being rehired by the Regents and that his claim is sufficient to command constitutional due process protection.

Due process requirements apply only to the deprivation of liberty or property interests as encompassed by the Fourteenth Amendment. When one of these interests is implicated, the due process right to notice and opportunity for hearing before any termination of such interests is paramount.[8] While it is clear that the property interests protected extend beyond actual ownership of chattels, real estate and money, and that the protections against deprivation of liberty go beyond the type of formal constraints imposed by the criminal process, yet the terms "liberty" and "property" must be given some meaning and the range of interests

was not in existence. The trial court made a finding of fact, with little evidence to the contrary, that no tenure policy existed at the School for the Deaf and appellant has not filed nor presented exceptions to that finding before this Court.

**8.** In some rare and extraordinary situations, it has been held that deprivation of a protected interest need not be preceded by opportunity for some kind of hearing. See, e. g., *Central Union Trust Co. v. Garvan*, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403 (1921); *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).

protected by procedural due process is not infinite. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). See also *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and annotation at 48 L.Ed.2d 996.

This Court fully recognizes that the meaning of "liberty" must be broad indeed. It denotes not merely freedom from bodily restraint, but the freedom to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men. *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). There are numerous situations wherein the State's refusal to reemploy a person could be considered tantamount to a deprivation of liberty, such as when the refusal is based upon the employee's exercise of a First Amendment or other constitutional right,[9] where the employee's good name and reputation are publicly threatened,[10] or where the employee's ability to take advantage of other employment opportunities is foreclosed. *Joint Anti-Fascist Refugee Com. v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951). In the absence of such or similar circumstances, however, it unduly strains the bounds of the concept to suggest that it is a deprivation of "liberty" when a person is simply not rehired but is not prevented from freely seeking other employment. *Cafeteria Workers v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

Similarly, the term "property interest" should not be strictly construed and the Fourteenth Amendment's procedural protection should safeguard those interests that a person has already acquired in certain benefits. In *Board of Regents v. Roth*, supra, the United States Supreme Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legiti-

mate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. 408 U.S. at 577, 92 S.Ct. at 2709.

In *Bishop v. Wood*, supra, a more recent case dealing with dismissals as a violation of due process rights, the Supreme Court quoted from *Perry v. Sindermann*, supra, that a

> "person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." 426 U.S. at 344, n. 6, 96 S.Ct. at 2077.

Accordingly, tenure policies and contractural provisions or promises have been held to provide sufficient interest in continued employment so as to be afforded due process protections. See *Slochower v. Board of Ed. of N. Y.*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); and *Connell v. Higginbotham*, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971). In the instant case, however, the existence of such policies or provisions is not before us. The circuit court's finding that no tenure policy existed is not challenged and petitioner makes no contractual claim to continued employment. Appellant makes only an abstract claim to a due process hearing but fails to convince this Court that he has any basis for entitlement to one.

We find in this case that a hearing was not necessary in order to terminate appellant and therefore any improprieties with respect to the hearing are inconsequential. See *Gendron v. Stone*, 99 R.I. 550, 209 A.2d 212 (1965), and *First National Bank of Abbeville v. Sehrt*, La.App., 246 So.2d 382 (1971).

We hold, therefore, that SDCL 13–43–9 through 13–43–11 are not properly applicable to appellant, that appellant did not have

---

9. *Perry v. Sindermann*, see note 6, supra.

10. *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

a due process right to a hearing in this case, and that, since there was no legal requirement that a hearing be held, the provisions of SDCL Chapter 1–26 with respect to contested cases do not apply.

Appellant having no statutory right to appeal the Regents' decision, the circuit court properly dismissed his petition for review.

All the Justices concur.