SOUTH DAKOTA BOARD OF RE-
GENTS, Applicant and Appellee,

v.

Judith MEIERHENRY, Secretary of the
Department of Labor, Respondent
and Appellant,

and

Melinda Sanderson (a/k/a Melinda
Heegel), Loretta Metzger, Richard
Kline, Real Parties in Interest,

and

James Zeman and the Council of Higher
Education (COHE), Real Parties in
Interest and Appellants.

Nos. 14309, 14353.

Supreme Court of South Dakota.

Argued Feb. 15, 1984.

Decided July 3, 1984.

James E. Carlon of Gors & Braun,
Pierre, for appellee Bd. of Regents.

Richard Dale, Asst. Atty. Gen., Pierre,
for respondent and appellant; Mark V.
Meierhenry, Atty. Gen., Pierre, on the
brief.

James McMahon of Boyce, Murphy,
McDowell & Greenfield, Sioux Falls, for
real party in interest Melinda Sanderson.

Karen Bjerke of Hagen & Wilka, Sioux Falls, for appellants James Zeman and the Council of Higher Educ. (COHE); Thomas K. Wilka of Hagen & Wilka, Sioux Falls, on the brief.

FOSHEIM, Chief Justice.

James Zeman, the Council of Higher Education and the Secretary of the South Dakota Department of Labor appeal the issuance of a peremptory writ of prohibition. We reverse.

The writ prohibited the secretary of labor from assuming jurisdiction over matters involving employment qualifications, salaries and discharge of professional employees at institutions under the control of the South Dakota Board of Regents. It was issued in response to grievance and unfair practice charges which had been filed with the department of labor by, or on behalf of, such professionals pursuant to SDCL ch. 3–18. Resolution of these disputes would have required the department of labor to make decisions involving the three areas prohibited by the circuit court writ.

■ The issue before us is whether SDCL ch. 3–18 violates Article XIV, Section 3 of the South Dakota Constitution in permitting the department of labor to exercise such jurisdiction.[1] We approach this question mindful of the settled law that enactments of the legislature should be upheld unless they are clearly and unmistakably unconstitutional. *South Dakota Board of Regents v. Meister*, 309 N.W.2d 121 (S.D. 1981); *People in Interest of T.L.J.*, 303 N.W.2d 800 (S.D.1981); *In Re Hinesley*, 82 S.D. 552, 150 N.W.2d 834 (1967).

■ Article XIV, Section 3 structures a board with control over state educational institutions:[2]

The state university, the agriculture college, the school of mines and technology, the normal schools, a school for the deaf, a school for the blind, and all other educational institutions that may be sustained either wholly or in part by the state *shall be under the control of* a board of five members appointed by the Governor and confirmed by the senate *under such rules and restrictions as the Legislature shall provide.* The Legislature may increase the number of members to nine. [Emphasis added]

With equal clarity Section 3 authorizes the legislature to restrict that control. *Board of Regents v. Carter*, 89 S.D. 40, 228 N.W.2d 621 (1975); *See also Boe v. Foss*, 76 S.D. 295, 77 N.W.2d 1 (1956); *State College Development Association v. Nissen*, 66 S.D. 287, 281 N.W. 907 (1938); *Johnson v. Jones*, 52 S.D. 64, 216 N.W. 584 (1927). It does not grant that board political autonomy. Consequently, the board of regents is not a fourth branch of government independent of legislative policies. *Meister*, 309 N.W.2d 121; *Carter*, 89 S.D. 40, 228 N.W.2d 621. Legislative powers remain. *State v. Dailey*, 57 S.D. 554, 234 N.W. 45 (1931).

■ Conversely, the legislature does not have unbridled license to regulate board of regents activity. Constitutionally authorized "rules and restrictions" must stop short of removing all power. SDCL ch. 3–18 restricts, but cannot, and does not, eradicate control. *Carter*, 89 S.D. 40, 228 N.W.2d 621.

SDCL ch. 3–18 was enacted in 1969 to permit organization of public employees' unions, SL 1969, ch. 88, and applies to many employees of institutions under board of regents control. SDCL 3–18–1. It defines unfair practices by a public employer and authorizes the department of labor to enforce the unfair practice provisions. SDCL 3–18–3.1 and SDCL 3–18–3.3. SDCL ch. 3–18 also authorizes the department of labor to hear and decide grievances which remain unresolved following the

---

**1.** The legislature has otherwise restricted board of regents control. That control is constitutionally subject to SDCL 3–6A–12, SDCL 3–6A–37 and SDCL 3–6A–38. *South Dakota Board of Regents v. Meister*, 309 N.W.2d 121 (S.D.1981).

**2.** The legislature carried out this constitutional mandate by designating a nine member "board of regents." SDCL 13–49–1.

grievance procedure of the controlling governing body. SDCL 3–18–15.2. In short, the provisions of SDCL ch. 3–18 open the way for the department of labor to hear and decide unfair practice and grievance matters involving salaries, qualifications and discharge of employees at institutions under board of regents control.

Appellees read Article XIV, Section 3 in a manner which gives little or no significance to the "under such rules and restrictions as the Legislature shall provide" provision concerning the involved three areas. Such a reading would essentially leave a grievant without any recourse. Appellees see support in *Worzella v. Board of Regents of Education,* 77 S.D. 447, 93 N.W.2d 411 (1958). We find that reliance totally misplaced.

*Worzella* is clearly distinguishable from the issue before us. That case involved the capacity of the board of regents to delegate its constitutional control to an institution of higher learning. It did not concern the power of the legislature to restrict activities of the board. Actually, when *Worzella* was decided the legislature had not yet enacted either SDCL ch. 3–18 or the restrictive legislation at issue in *Meister.*

■ To hold that the board of regents was constitutionally ordained with an absolute right of control free from legislative restraint would require us to ignore the "under such rules and restrictions as the Legislature shall provide" part of Section 3. A constitutional provision, like a statute, must be read giving full effect to all of its parts. *South Dakota Auto. Club Inc. v. Volk,* 305 N.W.2d 693 (S.D.1981); *Carter,* 89 S.D. 40, 228 N.W.2d 621; *Kneip v. Herseth,* 87 S.D. 642, 214 N.W.2d 93 (1974); *State ex rel. Oster v. Jorgenson,* 81 S.D. 447, 136 N.W.2d 870 (1965).

■ Appellees seek to buttress their position from language in *Carter* that the ability of the Regents to unilaterally set salaries, discharge employees, or establish employment qualifications is left intact. In *Carter* we concluded, as we do now, that the Board's basic right of control is left untouched, and SDCL 3–18 is but a permissible restriction on the exercise of that control. We did, however, in so concluding, misread *Worzella* which is evidenced in this *Carter* excerpt:

> In addition, Worzella v. Board of Regents of Education, supra, states that a statute allowing the board to delegate its authority must stop short of "empower(ing) the Board to delegate away all of its powers or its constitutional duty of control."

*Id.* 89 S.D. at 52, 228 N.W.2d at 628. The referred to passage in *Worzella* reads:

> Under SDC 15.0714 the Board of Regents "may delegate provisionally to the president, dean, principal, or faculty of any school under its control, so much of the authority conferred by this section as in its judgment seems proper..." This is a limited power. It does not empower the Board to delegate away all of its powers or its constitutional duty of control. Under its provisions the Board may only delegate the limited authority conferred on it by the same section.

*Worzella,* 77 S.D. at 451, 93 N.W.2d at 413. Clearly in that *Worzella* language, we did not discuss the authority of the legislature to restrict board of regents control. Rather it concerns the permissible scope of the regents authority to delegate powers conferred upon it by a statute.

In *Carlson v. Hudson,* 277 N.W.2d 715, 717 (S.D.1979), without reference to *Carter,* we likewise stated that the control vested in the regents by the constitution "unequivocally includes the unfettered right to employ and discharge its employees." That conclusion was based on our reading of this *Worzella* language:

> The above statutory provisions merely confirm and clarify the Board of Regents' constitutional power to employ and dismiss all officers, instructors, and employees at all institutions under its control. These provisions become a part of every contract of employment entered into by the Board. *Gillan v. Board of Regents of Normal Schools,* 88 Wis. 7, 58 N.W. 1042, 24 L.R.A. 336. It cannot

be restricted, surrendered, or delegated away. Our constitution prescribes that our state university and colleges "shall be under the control" of the Board of Regents. Without the right to employ, and the power to discharge, its employees the Board loses its constitutional right of control.

*Worzella,* 77 S.D. at 450–451, 93 N.W.2d at 413. Viewed likewise in the factual context of *Worzella,* that passage simply means the board of regents was without power to restrict, surrender or delegate its control. It did not relate to the constitutional capacity of the legislature to restrict that control. We do not confirm that board of regents power to employ and discharge is "unequivocally unfettered." As we said in *Johnson v. Jones,* 52 S.D. 64, 216 N.W. 584 (1927), it can be fettered by statutory provisions. We nevertheless recognize the correctness of the result in *Hudson.* We there held that the legislature could not statutorily establish a tenure system for employees of the board of regents. Any other conclusion would have effectively nullified all control of the regents over that area of activity. As noted, legislative restrictions must stop short of erasing regent control.

Our most recent interpretation of Article XIV, Section 3 was *South Dakota Board of Regents v. Meister,* 309 N.W.2d 121 (S.D.1981). In *Meister,* we refocused on the "rules and restrictions" clause. We held that the legislature could constitutionally permit the personnel policy board of the career service commission to assume jurisdiction over grievances of nonprofessional employees of board of regents institutions pursuant to several sections of the Career Services Act. SDCL 3–6A–12, 3–6A–37, 3–6A–38. Whether the legislature could grant professional employees similar grievance review was not at issue. The statutes considered concerned only nonprofessionals. We said in *Meister* that this distinction is critical. Our decision here is a natural extension of *Meister.* Although the distinction between professionals and nonprofessionals is not here significant, the *Meister* rationale stands.

We conclude that SDCL ch. 3–18 does not erase board of regents control and is therefore a valid restriction pursuant to Section 3 of our constitution.

The writ of prohibition is quashed.

DUNN and MORGAN, JJ., concur.

WOLLMAN and HENDERSON, JJ., dissent.

WOLLMAN, Justice (dissenting).

Inasmuch as it is sometimes helpful in gauging the scope of an appellate opinion's rulings on questions of law to have an understanding of some of the underlying facts that gave rise to the controversy before the court, I summarize the complaints of the real parties in interest in this case.

Loretta Metzger is a former member of the faculty at Dakota State College in Madison. In February of 1982, President Opgaard of Dakota State recommended that the Board of Regents (Board) terminate Metzger's employment because of her misconduct. Agreeing with this recommendation, the Board subsequently terminated Metzger's employment, whereupon she filed a grievance pursuant to the procedures established in the contract between the Board and appellant Council of Higher Education (COHE). After considering the grievance, the Board made a settlement offer to Metzger on May 20, 1982. In view of Metzger's failure to respond to this offer, the Board withdrew it on June 24, 1982.

On October 21, 1982, the Department of Labor (department) informed the Board that Metzger had filed an unfair labor practice complaint and grievance appeal challenging the termination of her employment. Metzger alleged in this complaint that she had been wrongfully terminated and asked that the department reinstate her to her former position on the Dakota State faculty.

Appellant Zeman is a member of the Northern State College faculty. He applied for the position of chairman of the Department of Language, Literature and

Speech. His application was rejected, and Dr. Richard Kline was subsequently appointed to this position by the president of Northern State, whereupon Zeman filed an unfair labor practice complaint alleging that his application had been rejected because of his membership in COHE. Zeman's complaint and claim for relief asks the department to order that he be named as chairperson of the Department of Language, Literature and Speech at Northern State College, that he be offered an additional half contract for the first summer session and with work in freshman registration during the second summer session, and that he be compensated for the entire 1981–82 school year as though he had been chairman of the department.

In June of 1980, Melinda Sanderson was appointed to the position of clinical audiologist at the South Dakota School for the Deaf. She is not a teacher, and she does not teach. In May of 1981, COHE filed an unfair labor practice complaint alleging that Ms. Sanderson's appointment violated the contract between the Board and COHE because she was being paid a salary approximately $5,000 greater than the salary she would have received under the teachers' salary schedule set forth in the contract. COHE's complaint asks the department to adjust Ms. Sanderson's salary to a level commensurate with the salary schedule set forth in the agreement between COHE and the Board.

As I read it, the majority opinion holds that the department has jurisdiction over the foregoing complaints, which would include the authority to grant the relief requested in each complaint. SDCL 3–18–15.2. *Cf. Fries v. Wessington School Dist. No. 2–4*, 307 N.W.2d 875 (S.D.1981).

In view of this broad grant of authority to the department, it strains one's credulity to read the majority opinion's pronouncement "that the Board's basic right of control is left untouched ...." Reduced to a syllogism, the majority opinion's reasoning appears to be as follows:

South Dakota Constitution, Art. XIV, Section 3, permits the legislature to impose restrictions upon the Board of Regents so long as the restrictions do not erase all Regent control.

SDCL ch. 3–18 does not erase all Board of Regent control.

SDCL ch. 3–18 is not unconstitutional as applied to the Board of Regents.

In overruling *Board of Regents v. Carter*, 89 S.D. 40, 228 N.W.2d 621 (1975), the majority focuses upon what it construes as the *Carter* court's misreading of *Worzella v. Board of Regents of Education*, 77 S.D. 447, 93 N.W.2d 411 (1958). Now it is true that the decision in *Worzella* was based, probably incorrectly, on a delegation of powers premise. (For an incisive analysis of the *Worzella* decision, *see* "Academic Tenure at South Dakota's State Supported Colleges and University," 5 S.D.L.Rev. 31 (1960)). Whether the *Carter* court misread *Worzella* is irrelevant, however. The *Carter* decision recognized that there are limits upon the legislature's right to impose rules and restrictions upon the Board. Although today's majority opinion purports to reaffirm *Carter*, it quite clearly overrules the premise upon which *Carter* was based. It does so, moreover, without indicating what limits exist with respect to the legislature's powers under Art. XIV, Section 3, unless, of course, the reaffirmation of the holding in *Carlson v. Hudson*, 277 N.W.2d 715 (S.D.1979), that the legislature may not statutorily establish a tenure system for the Board's employees is an indication of the only restriction that remains upon the power of the legislature.

The majority opinion concludes by holding that because SDCL ch. 3–18 does not erase the Board's control it does not infringe upon the constitutional authority granted to the Board by Art. XIV, Section 3. Only by indulging in the most Pickwickian definition of "control" can such an assertion be made.

I adhere the views set forth in my dissents in *Carter* and in *South Dakota Board of Regents v. Meister*, 309 N.W.2d 121 (S.D.1981) (all the while resisting a nigh overpowering temptation to indulge in the I-told-you-so school of appellate juris-

prudence). The authority granted to the department by today's opinion trenches upon the essence of the Board's right of basic control that the plurality opinion in *Carter* was (or thought it was) careful to protect. What control remains in the Board after today's opinion will remain to be seen.

HENDERSON, Justice (dissenting).

The South Dakota Department of Labor is attempting to conduct hearings and issue orders removing from the Board of Regents the final authority to determine qualifications, grounds for discharge, and salaries for professional employees. Under the guise of an unfair labor practice or grievance appeal, the Department of Labor would determine Heegel's salary (reduce it by $5,000), Zeman's employment qualifications (interfere with the Regent's discretion as to whom should be heading up the Department of Language, Literature, and Speech at Northern State College), and the propriety of Metzger's termination (Regents having terminated her for misconduct).

Under a colossal governmental grab of power, the Department of Labor seeks to engulf the constitutional and statutory authority of the Board of Regents of this state. By the decision of this Court, it is now fait accompli. Professionals in education are now laborers. They will be dealt with by a labor board. As regards the supervision of professional people, the majority opinion emasculates and destroys the effectiveness of the Board of Regents. By virtue of this decision, and under SDCL 3–18–15.2, the Department of Labor may now "conduct an investigation and hearing and shall issue an order covering the points raised, which order is binding on the employees and the governmental agency." The jurisdiction of the Board of Regents— the academic overlay in that Board—such as we have known it in this state down through the years is gone. Under SDCL 3–18–15.2, and per this decision, the Board of Regents can be ordered by a labor tribunal to increase or decrease professional salaries, hire and fire professionals by edict, and correct that constitutional board akin to a parent disciplining a child. It all bodes ill for our institutions of higher learning in South Dakota.

Appellants argue that the Board of Regents acquiesced in a diminution of its control by entering into collectively bargained agreements with the Council of Higher Education. To assert this, is to ignore the language of those agreements. Each agreement with the Council of Higher Education leaves final authority with the Board of Regents in matters involving the employment, discharge, and salaries of professional employees. The Board of Regents cannot delegate this type of authority either expressly or impliedly or by an agreement with any labor council to the Department of Labor. *Carlson v. Hudson,* 277 N.W.2d 715 (S.D.1979); *Worzella v. Board of Regents,* 77 S.D. 447, 93 N.W.2d 411 (1958). The contracts reserve the final administrative decision in matters of this import to the Board of Regents. Apparently understanding and appreciating the past decisions of this Court, the Board of Regents wisely, and as a matter of constitutional necessity, made this reservation. Appellants would have this Court believe that, if they are not successful in this appeal, they have no remedy. That is not true. They do have a grievance procedure before the Board of Regents. This is known as the "Faculty Grievance Procedure" and is found in the Board of Regents' Policy Manual. Metzger, as an example, was afforded an opportunity to grieve her discharge for cause. It is totally fallacious for appellants to advocate that the Board of Regents-Council of Higher Education contract precludes a professional from filing a grievance.[1] Appellants would

---

1. Article 6.30(1) of the Board of Regents-Council of Higher Education contract provides: "Any other grievances authorized by law, and which do not constitute a grievance under this defini- tion, may be processed through the Board of Regents Policy, 5.4 ...." Section 5.4 precludes substantive complaints for nonrenewal, salary, denial of promotion, or denial of tenure. Com-

further have this Court believe that if they are not successful in converting this Court to their advocacy, i.e., unless they can carry their grievances before the Department of Labor, they have no remedy whatsoever. This is false. If a professional grieves by virtue of a written complaint, and if the Board of Regents denies same, the grievants, after exhausting their administrative remedies, may appeal to the circuit court. Their "day in court" will not be taken from them. Appellants, however, desire to abandon their "day in court" in circuit court and to proceed from one constitutional board to an administrative agency.

The Department of Labor does not have jurisdiction over the Board of Regents' professional employees by virtue of Executive Reorganization via Article IV, § 8 of the South Dakota Constitution.

The Executive Reorganization Order of 1973 was issued pursuant to Article IV, § 8 of the South Dakota Constitution. An order thereunder provided for the transfer of power, duties, and functions of various state agencies. Significantly, the order provided: "It is the intent of this executive order not to increase, decrease or change the statutory functions, powers and duties of any agency existing before the effective date of this order unless such intent is specifically expressed within this executive order." 1973 S.D.Sess.L. ch. 2.

This Court recognized a constitutional transfer of authority from the Board of Regents to the Career Service Commission. *South Dakota Board of Regents v. Meister*, 309 N.W.2d 121 (S.D.1981). We held that Executive Order No. 73–1 transferred final administrative jurisdiction over the Board of Regents' nonprofessional employees to the Career Service Commission. The distinction between nonprofessional employees and professionals was deemed to be "critical." Although this Court recognized a limitation of Regents' control over nonprofessional employees, it explicitly excluded from the Legislature's increased authority to limit the Regents' control matters involving professional employees. *Meister's* rationale was based upon a constitutional amendment plus Executive Reorganization providing the Career Service Commission with jurisdiction in matters pertaining to nonprofessionals. Executive Order No. 73–1 specifically expressed within the order an intent for that transfer. Section 28 of the Order (1973 S.D.Sess.L. ch. 2, § 28) provides:

This system of career service personnel management may apply to all employees of the executive branch of state government except: ... (f) Presidents, deans, administrative and policy making officers, student health service physicians and certified teaching and professional research personnel at the colleges and universities under the jurisdiction of the state board of regents and other directors or administrative policy making officers of such institutions as determined by the personnel policy board ....

Section 28 of Executive Order No. 73–1, in conjunction with Article IV, § 8 of the South Dakota Constitution, effectively amended Article XIV, § 3. The implied amendment, by specifically expressed intent within Executive Order No. 73–1, transferred the final administrative authority over nonprofessional personnel matters to the Career Service Commission. *Meister*, 309 N.W.2d at 123.

The majority opinion, with an unfounded leap of logic, relates that the majority decision is "a natural extension of *Meister*." I whole-heartedly disagree with that rationale. Whereas the Career Service Commission was bestowed with a grant of authority over nonprofessional employees, the Department of Labor has not been blessed with increased authority over the Board's professional employees. The provisions of Executive Order No. 73–1 specifically named the Board of Regents' nonprofessional employees and transferred jurisdiction over them unto the Career Service Commission. 1973 S.D.Sess.L. ch. 2, § 28. By contrast, Executive Order No. 73–1 does not express an intent to transfer juris-

plaints of illegal discrimination are to be brought under Section 7.1.9 of the Board of

Regents' Policy Manual. Appellants do not wish to abide by their contract!

diction over the Regents' professional employees to the Department of Labor. If one examines the sections of Executive Order No. 73–1 pertinent to Executive Reorganization of the Department of Labor, such research will disclose no reference to the Board of Regents. Most importantly, in the absence of a specifically expressed intent within Executive Order No. 73–1, there is no increase or change in the powers, functions, or responsibilities of the Department of Labor or the Board of Regents. *See* 1973 S.D.Sess.L. ch. 2, § 3. SDCL ch. 3–6A confirms the Career Service Commission's constitutional authority as established by specific reference in Executive Order No. 73–1. Executive Reorganization provided no constitutional amendment which authorized the enactment of unfair labor practice and grievance appeal procedures applicable to professional employees. There simply exists no constitutional amendment for SDCL 3–18–3.1, SDCL 3–18–3.3, and SDCL 3–18–15.2. Therefore, the trial court below correctly held that Executive Reorganization did not authorize the South Dakota Department of Labor to apply unfair labor practice and grievance appeal procedures with respect to professional employees under the authority of the Board of Regents. Properly did the trial court issue a Writ of Prohibition to prevent the Department of Labor from exceeding its jurisdiction. Therefore, I respectfully dissent. This state simply does not need a labor board hounding and second-guessing the decisions of a constitutional board which is constitutionally empowered to run our state institutions and statutorily granted the right to employ and dismiss its employees under SDCL 13–49–14.[2]

---

2. SDCL 13–49–14 provides:

The board of regents is authorized to employ and dismiss all officers, instructors, and employees of such institutions, necessary to the proper management thereof, to determine their number, qualifications, and duties, fix the term of their employment, and rate and manner of their compensation, provide for a sabbatical leave on part pay, and provide for a retirement program; provided, that no person shall be employed or dismissed by reason of any sectarian or political opinions held.